## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| MARK VOGEL ACQUISITIONS, LLC, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| PRINCE GEORGE'S COUNTY MD, *et al.*, | ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 24-cv-03008-LKG

Dated:  August 14, 2025

### <u>MEMORANDUM OPINION</u>

### I.    INTRODUCTION

In this civil action, the Plaintiffs, Mark Vogel Acquisitions, LLC ("MVA"), Morgan Central, LLC ("Morgan Central") and Mark Vogel, bring federal and state law claims against the Defendants, Prince George's County, Maryland and Angie Rodgers,[1] arising from the proposed sale of certain property owned by the Washington Metropolitan Area Transit Association ("WMATA").  *See generally* ECF No. 1.  The Defendants have moved to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 12.  The motion is fully briefed.  ECF Nos. 12 and 16.  No hearing is necessary to resolve the motion.  L.R. 105.6 (D. Md. 2025).  For the reasons that follow, the Court: (1) **GRANTS-in-PART and DENIES-in-PART** the Defendants' motion to dismiss (ECF No. 12); and (2) and **DISMISSES** the complaint.

---

[1] On June 24, 2025, the Plaintiffs stipulated to the dismissal of Liz Price as a defendant in this case.  ECF No. 22.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

### A.  Factual Background

In this civil action, the Plaintiffs bring federal and state law claims against the Defendants arising from the proposed sale of a certain property owned by WMATA in Prince George's County, Maryland.  *See generally* ECF No. 1.  Specifically, the Plaintiffs assert the following four claims in the complaint: (1) tortious interference with economic relations, pursuant to 42 U.S.C. §§ 1981 and 1983 (Count I); (2) equal protection claim, pursuant to 42 U.S.C. § 1983 (Count II); civil conspiracy to deprive the Plaintiffs of equal protection, pursuant to 42 U.S.C. §§ 1983 and 1985 (Count III); and violation of Article 24 of the Maryland Declaration of Rights (Count IV).  *See id*. at ¶¶ 59-102.  As relief, the Plaintiffs seek, among other things, to recover compensatory damages, punitive damages and attorneys' fees and costs from the Defendants, or, alternatively, an injunction ordering WMATA to sell the subject property to the Plaintiffs.  *Id*. at Prayer for Relief.

<u>The Parties</u>

Plaintiff MVA is a real estate investment and development limited liability company, with its principal place of business located in Anne Arundel County, Maryland.  *Id*. at ¶ 10.

Plaintiff Morgan Central is a limited liability company, with its principal place of business located in Anne Arundel County, Maryland.  *Id*. at ¶ 11.

Plaintiff Mark Vogel identifies as a Caucasian, and he is a real estate developer and entrepreneur who resides in Anne Arundel County, Maryland.  *Id*. at ¶¶ 4 and 12.

Defendant Prince George's County, Maryland is a municipal corporation duly organized and existing under the laws of the State of Maryland.  *Id*. at ¶ 13.

Defendant Angie Rodgers is the Deputy Chief Administrative Officer for the Office of the County Executive for Prince George's County, Maryland.  *Id*. at ¶ 14.

<u>The Plaintiffs' Attempt To Purchase The WMATA Property</u>

This civil action arises from a dispute regarding the proposed sale of certain real estate located in Prince George's County, Maryland to the Plaintiffs.  In 2019 and 2021, the Plaintiffs

---

[2] The facts recited in this memorandum opinion are taken from the complaint; the Defendants' motion to dismiss and the memorandum in support thereof; and the Plaintiffs' response in opposition thereto.  ECF Nos. 12 and 16.  Unless otherwise stated, the facts recited herein are undisputed.

acquired two undeveloped parcels of land (the "8104 Property" and the "7912 Property") in Prince George's County Maryland. *Id.* at ¶¶ 16-17. The 8104 Property and the 7912 Property are located on Central Avenue in Hyattsville, Maryland, near another property that is owned by WMATA (the "WMATA Property"). *Id.* at ¶¶ 16-18.

In the complaint, the Plaintiffs allege that they intended to acquire the WMATA Property and to consolidate this property with the 8104 Property and 7912 Property, to form a single real estate development known as the Morgan Boulevard Project. *Id.* at ¶¶ 18-19. The Morgan Boulevard Project involves plans to develop multi-family housing, retail space and commercial offices for lease. *Id.* at ¶¶ 19-20.

In 2021, Plaintiff Mark Vogel began negotiations with WMATA to purchase the WMATA Property. *Id.* at ¶ 21. The Plaintiffs allege that the then-Vice President of Real Estate and Parking for WMATA, Liz Price, confirmed that an appraisal of the WMATA Property was necessary and that she expressed that it made "sense" for WMATA to sell the WMATA Property to the Plaintiffs. *Id.* The Plaintiffs also allege that they were financially prepared to acquire the WMATA property and that WMATA was similarly ready to sell this property to the Plaintiffs. *Id.* at ¶ 22.

But the Plaintiffs allege that Liz Price later communicated with the Deputy Chief Administrative Officer for the Office of the County Executive for Prince George's County, Defendant Angie Rodgers, and that Ms. Price subsequently informed the Plaintiffs that the sale could not proceed and that the Plaintiffs' "problem was with [Defendant Prince George's County], not with [WMATA]." *Id.* at ¶¶ 23-24.

Thereafter, the Plaintiffs allege that Plaintiff Mark Vogel and his counsel sought to engage with Defendant Angie Rodgers, through meetings and communications, regarding the proposed sale of the WMATA Property. *Id.* at ¶¶ 25-34. In this regard, the Plaintiffs allege that Defendant Angie Rodgers stated that the County did not want Mr. Vogel to acquire the WMATA Property, because "it was not interested in competing with him," during a January 12, 2022 meeting. *Id.* at ¶ 35.

The Plaintiffs also allege that, after further communications between Plaintiff Mark Vogel and Defendant Angie Rodgers in early 2022, Mr. Vogel believed that Prince George's County's opposition to his purchase of the WMATA Property had ended and he resumed development planning. *Id.* at ¶¶ 36-39. But, the Plaintiffs allege that Defendant Angie Rodgers

3

ceased further meetings with Mark Vogel about purchasing the WMATA Property on December 15, 2022. *Id.* at ¶ 40. And so, in June 2023, the Plaintiffs sent a demand letter to the Prince George's County Attorney. *Id.* at ¶ 42. Thereafter, the Prince George's County Attorney sent a letter of intent to Mr. Vogel stating its intent to purchase the 8104 Property and 7912 Property from the Plaintiffs. *Id.* at ¶ 43.

The Plaintiffs and Prince George's County have attempted to resolve their dispute regarding the WMATA Property. *Id.* at ¶¶ 44-45. But these efforts have been unsuccessful to date. *Id.* And so, the Plaintiffs contend that the Defendants have continued to block their efforts to acquire the WMATA Property. *Id.*

The Plaintiffs' Allegations

In Count I of the complaint, the Plaintiffs allege that the Defendants tortiously interfered with their economic relations, in violation of 42 U.S.C. § 1981, by interfering with their ability to contract with WMATA for the sale of the WMATA Property. *Id.* at ¶¶ 59-72. In this regard, the Plaintiffs allege that Defendant Angie Rodgers' actions blocking the sale of the WMATA Property "were premised, at least in part, on Mr. Vogel's race, because Defendant Rodgers's allowed similarly situated African American real estate developers to negotiate with WMATA for the sale and purchase of property situated within the County without objection or interference." *Id.* at ¶ 67.

In Count II of the complaint, the Plaintiffs assert a Section 1983/equal protection claim against the Defendants and the Plaintiffs allege that the Defendants violated their rights under the Equal Protection Clause of the Fourteenth Amendment, because, "[w]hile acting under color of state law," Defendant Angie Rodgers "arbitrarily singled-out Mr. Vogel by imposing a discriminatory barrier that prohibited Mr. Vogel from receiving the same privileges under law as those readily conferred upon other similarly situated real estate developers . . . ." *Id.* at ¶ 77.

In Count III of the complaint, the Plaintiffs assert a claim for civil conspiracy to deprive them of equal protection against the Defendants, pursuant to Sections 1983 and 1985. *Id.* at ¶¶ 84-98. In this regard, the Plaintiffs allege that the actions taken by Defendant Angie Rodgers and Liz Price where undertaken under color of state law and deprived the Plaintiffs of their right to enter into a contract with WMATA for the sale of the WMATA Property on an equal basis with other real estate developers seeking to purchase WMATA-owned properties located in Prince George's County. *Id.* at ¶ 92. And so, the Plaintiffs also allege that Defendant Prince

George's County is liable for these actions, because the "wrongful actions" of Defendant Rodgers's can be construed as a policy of the County. *Id*. at ¶ 93.

Lastly, the Plaintiffs allege in Count IV of the complaint that the aforementioned actions by the Defendants have also deprived the Plaintiffs of their rights protected under Article 24 of the Maryland Declaration of Rights. *Id*. at ¶¶ 99-102. And so, the Plaintiffs seek, among other things, to recover compensatory damages, punitive damages and attorney fees and costs from the Defendants, or, alternatively, an injunction ordering WMATA to sell the subject property to the Plaintiffs. *Id.* at Prayer for Relief.

### B. Relevant Procedural History

The Plaintiffs commenced this civil action on October 16, 2024. ECF No. 1. On December 6, 2024, Defendants Prince George's County and Angie Rodgers filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof. ECF Nos. 12 and 12-1. On December 20, 2024, the Plaintiffs filed response in opposition to the motion. ECF No. 16.

The Defendants' motion to dismiss having been fully briefed, the Court resolves the pending motions.

## III.    LEGAL STANDARDS

### A.    Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But, the complaint must contain more than "legal conclusions, elements of a cause of action and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd.*, 591 F.3d at 255. "Although we accept the well-pleaded factual allegations of a complaint as true, and we draw reasonable inferences therefrom in the plaintiff's favor, we do not blindly accept

'allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences,' nor do we accept 'allegations that contradict matters properly subject to judicial notice.'" *Stratton v. Mecklenburg Cnty. Dep't of Soc. Servs.*, 521 F. App'x 278, 288 (4th Cir. 2013) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)). And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989)).

### B.  Section 1981

Title 42, United States Code, Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). The United States Court of Appeals for the Fourth Circuit has long recognized that Section 1981 applies to individuals of any race. *Fiedler v. Marumsco, Christian Sch*., 631 F.2d 114, 1149-50 (4th Cir. 1980) (citation omitted).

To establish a *prima facie* case of discrimination under Section 1981, a plaintiff must show that: (1) he is a member of a protected class; (2) he sought to enter into a contract with the defendant; (3) he met the requirements to enter into the contract; and (4) he was denied an opportunity available to persons outside of the protected group to enter into the contract. *See Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004); *Murrell v. Ocean Mecca Motel, Inc.*, 262 F.3d 253, 257 (4th Cir. 2001). Section 1981 protects not only individuals seeking to enter into new contracts, but also those attempting to enforce existing contractual relationships. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). But a plaintiff must demonstrate that he possessed—or would have possessed—rights under the contractual relationship at issue to prevail on a Section 1981 claim. *Id.* at 479-80.

In this regard, a complaint alleging race-based interference with a contract must identify an impaired contractual relationship. *See Domino's Pizza*, 546 U.S. at 476. Given this, speculative claims regarding a lost business or prospective opportunities, without specific facts identifying impaired contractual relationships, do not suffice. *See Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350-51 (4th Cir. 2013) (holding that conclusory and speculative allegations that the landlord interfered with restaurant's ability to contract with customers,

6

through conduct motivated by racial animus, were insufficient to state a claim under Section 1981).  The Fourth Circuit has also made clear that a Section 1981 plaintiff is not required to plead a *prima facie* case of discrimination at the motion to dismiss stage.  *See Woods v. City of Greensboro*, 855 F.3d 639, 651 (4th Cir. 2017).  But the plaintiff "must plead[] sufficient facts to justify an inference, plausibly and reasonably indulged" that they were intentionally discriminated against based on race in the making or enforcement of a contract.  *Id.*  And so, a plaintiff pursuing a claim under Section 1981 must demonstrate intentional racial discrimination that impaired a contractual right in which the plaintiff personally held or would have held legal interests.  *Domino's Pizza*, 546 U.S. at 479-80.[3]

### C.  Sections 1983 And 1985 And Equal Protection Claims

Title 42, United States Code, Section 1983 provides a mechanism for individuals who have had their constitutional rights violated to seek a remedy against individual state actors.  *See* 42 U.S.C. § 1983 (providing that if any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives a United States citizen of any constitutional right, that person may be liable in a suit for money damages).  Claims brought under 42 U.S.C. § 1983 are governed by the three-year statute of limitations applicable to civil actions in Maryland.  *Owens v. Balt. City State's Att'y's Off.*, 767 F.3d 379, 388 (4th Cir. 2014); *see also Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 887 (4th Cir. 2023) ("[T]he standard rule [for statutes of limitations in Section 1983 claims is] that the [accrual occurs] when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.") (citations and internal quotation marks omitted); *see also* Md. Code Ann., Cts. & Jud. Proc. § 5-101.  "[I]t is well-established that plaintiff may only bring a Section 1983 claim against persons acting under the color of law for a state, territory, or the District of Columbia."

---

[3] The Supreme Court of the United States has held that a corporate officer or shareholder has "no rights and is exposed to no liability under the corporation's contracts," even if personally affected by alleged racial discrimination.  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 477, 476 (2006).  The United States Court of Appeals for the Fourth Circuit has applied this principle to limited liability companies and held that individuals who elect to operate through a limited liability companies may not assert Section 1981 claims for injuries to the LLC.  *See Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 348 (4th Cir. 2013) (The Fourth Circuit denied the individual plaintiffs' Section 1981 claims, holding that members of an LLC lack standing to sue for interference with the LLC's contracts, even if they personally suffer harm); *see also Lawrence v. DAP Prods., Inc.*, No. ADC-22-651, 2022 WL 2275595, at *3 (D. Md. June 23, 2022) (holding that even a sole member of an LLC lacks standing under Section 1981 to assert claims based on injury to the LLC, despite allegations of personal harm from racial discrimination).

*Haughton v. United States Dep't of Homeland Sec.*, No. 20-CV-03189-LKG, 2021 WL 5989210, at *6 (D. Md. Dec. 17, 2021) (citing 42 U.S.C. § 1983); *see also Gilbert v. United States Bureau of Alcohol, Tobacco, Firearms & Explosives*, 306 F. Supp. 3d 776, 785 (D. Md. 2018).  And so, to state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) a deprivation of a right secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011).

Section 1983 also permits a plaintiff to bring a claim directly against a municipality if the municipality causes a deprivation of a constitutional right through an official policy or custom.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  But, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original).  Given this, a local government, such as the County, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell*, 436 U.S. at 694.  And so, the Supreme Court has held that a municipality may be liable under Section 1983 "when a municipality's policy or custom has caused the violation of an individual's federal rights."  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 296 (2002) (J. Stevens, dissenting).

Relevant to the pending motion to dismiss, a Section 1983 plaintiff must show that the defendant acted under color of state law—that is, "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *West*, 487 U.S. at 49 (citation and internal quotation marks omitted).  Whether a defendant exercises such authority is determined by looking at "state and local positive law, as well as custom or usage having the force of law."  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (citation and internal quotation marks omitted).  Given this, Section 1983 imposes personal liability only on those individuals who directly caused the constitutional deprivation.  *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to Section 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  And so, a plaintiff must allege that the defendant's own conduct, not that of others, resulted in the alleged constitutional violation.  *Id.*

Title 42, United States Code, Section 1985 addresses conspiracy to interfere with civil rights.  42 U.S.C. § 1985.  This statute provides, in relevant part, that:

**Depriving persons of rights or privileges**

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Section 1985(3) provides a remedy where "two or more persons" conspire to deprive another of equal protection or equal privileges under the law. 42 U.S.C. § 1985(3). To state a claim under Section 1985(3), a plaintiff must plead: "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995); *see Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971). The conspiracy must also be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin*, 403 U.S. at 102.

To establish a claim for violation of the Equal Protection Clause, a plaintiff must allege that they were treated differently from similarly situated individuals, and that this differential treatment was both intentional and based on a suspect classification such as race. *See Washington v. Davis*, 426 U.S. 229, 239 (1976). A plaintiff may rely on either direct evidence of discriminatory animus or circumstantial comparator evidence to support an equal protection claim. *See Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 818-19 (4th Cir. 1995).

### D.  Article 24 Of The Maryland Declaration Of Rights

Lastly, Article 24 of the Maryland Declaration of Rights provides that "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."  Md. Const. Decl. of Rts. art. 24.  Article 24 protects due process rights and is the Maryland "analogue to the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution."  *Rovin v. State*, 321 A.3d 201, 218 (Md. 2024) (citing *State v. Dett*, 891 A.2d 1113, 1120 n.3 (Md. 2006)).  Article 24 is interpreted *in pari materia* with the Due Process Clause of the Fourteenth Amendment.  *Doe v. Dep't of Pub. Safety & Corr. Servs.*, 971 A.2d 975, 982 (Md. Ct. Spec. App. 2009) (declining to interpret Article 24 more broadly than the Due Process Clause of the Fourteenth Amendment).  Claims under Article 24 are also subject to Maryland's general three-year limitations period for civil actions.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101.

## IV.    ANALYSIS

The Defendants have moved to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6), upon the following four grounds: (1) the complaint lacks factual specificity and fails to meet the pleading standards; (2) Plaintiff Mark Vogel lacks standing to assert a claim for damages in this case; (3) Defendant Prince George's County cannot be liable for the conduct alleged in the complaint, because Defendant Rodgers lacked final decision and policy-making authority and (4) the Plaintiffs' claims are time-barred.  *See generally* ECF No. 12-1.  And so, the Defendants request that the Court dismiss the complaint.  *Id.* at 11.

In their response in opposition, the Plaintiffs counter that the Court should not dismiss this matter, because: (1) the complaint states plausible race discrimination claims under Sections 1981 and 1983; (2) Plaintiff Mark Vogel may bring a claim for damages, because the complaint alleges direct discrimination against Mr. Vogel; (3) the complaint alleges that Defendant Angie Rodgers's input was critical to the decision to terminate the negotiations with Plaintiff Mark Vogel; and (4) the Plaintiffs' claims are timely, because they allege a pattern of discriminatory conduct by the Defendants that extends into the limitations period.  ECF No. 16.

For the reasons set forth below, a careful reading of the complaint shows that the Plaintiffs' claims are not clearly time-barred, because the Plaintiffs allege facts that, taken as true, show that the Defendants' alleged discriminatory conduct extended into the applicable

limitations period for their claims. But a careful reading of the complaint shows that the Plaintiffs have not alleged sufficient facts to show a plausible inference of intentional discrimination upon the basis of race, with regards to the sale of the WMATA Property, to support their Section 1981 claim. Lastly, the Defendants also persuasively argue that the Plaintiffs cannot prevail on their Section 1983 claim, because Defendant Angie Rodgers did not act under color of state law with regards to the alleged conduct as a matter of law. These deficiencies also preclude as a matter of law the Plaintiffs' conspiracy claim and claim under Article 24 of the Maryland Declaration of Rights. And so, the Court: (1) GRANTS-in-PART and DENIES-in-PART the Defendants' motion to dismiss (ECF No. 12); and (2) DISMISSES the complaint.

> **A. The Defendants Have Not Shown That The Plaintiffs' Claims Are Time-Barred**

As an initial matter, the Court declines to dismiss the Plaintiffs' claims as time-barred, because it is not apparent from the face of the complaint that the Plaintiffs' claims are untimely. The Court may dismiss the Plaintiffs' claims at the 12(b)(6) stage when the face of the complaint clearly establishes that the claims are untimely. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (holding that a limitations defense may only be resolved on a motion to dismiss where the time bar is apparent from the face of the complaint). It is also well-established that claims brought pursuant to Sections 1983 and Article 24 of the Maryland Declaration of Rights are subject to a three-year statute of limitations. *See Owens*, 767 F.3d at 388; *see also* Md. Code Ann., Cts. & Jud. Proc. § 5-101. [4] But this limitations period does not begin to run until the last alleged discriminatory act occurs, when a plaintiff alleges discrimination claims based upon the continuing violation doctrine. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002).

---

[4] While Maryland law governs the length of the limitations period, federal law determines when a Section 1983 claim accrues. *McDonough v. Smith*, 588 U.S. 109, 115 (2019). An accrual occurs when the plaintiff knows or has reason to know of the injury that forms the basis of the action. *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997); *Owens v. Balt. City State's Att'y's Off.*, 767 F.3d 379, 389 (4th Cir. 2014). But, where a plaintiff alleges a continuing violation, the limitations period does not begin to run until the last act in the series of alleged discriminatory conduct. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002).

In this case, the Plaintiffs allege that the Defendants engaged in a pattern of discriminatory conduct that began in 2021 and continued until at least December 2022. ECF No. 1 at ¶¶ 1-40 and 45. The Plaintiffs commenced this matter on October 16, 2024, which is well-within the three-year state of limitations period for some of the alleged discriminatory conduct in this case. ECF No. 1. Given this, the face of the complaint does not clearly establish that the Plaintiffs' claims are untimely. And so, the Court DENIES the Defendants' motion to dismiss these claims as untimely. *See Goodman*, 494 F.3d at 464.

**B. The Plaintiffs Fails To State A Plausible Section 1981 Claim**

The Defendants persuasively argue, however, that the Plaintiffs cannot prevail on their Section 1981 discrimination claim, because the complaint lacks sufficient factual allegations to show an inference of racial discrimination. To establish a *prima facie* case of discrimination under Section 1981, the Plaintiffs must show that: (1) they are a member of a protected class; (2) they sought to enter into a contract with the Defendants; (3) they met the requirements to enter into the contract; and (4) they were denied an opportunity available to persons outside of the protected group to enter into the contract. *See Williams*, 372 F.3d at 667; *Murrell.*, 262 F.3d at 257. While the Fourth Circuit has made clear that a Section 1981 plaintiff is not required to plead a *prima facie* case of discrimination at the motion to dismiss stage, *Woods v. City of Greensboro*, 855 F.3d 639, 651 (4th Cir. 2017), the Plaintiffs must, nonetheless, allege facts in the complaint to justify an inference that they were intentionally discriminated against based on race in the making or enforcement of a contract. *Id*.

In this case, a careful reading of the complaint makes clear that the Plaintiffs fail to meet this standard. In Count I of the complaint, the Plaintiffs allege that the Defendants tortiously interfered with their economic relations, in violation of 42 U.S.C. § 1981, by interfering with their ability to contract with WMATA for the sale of the WMATA Property. ECF No. 1 at ¶¶ 59-72. In this regard, the Plaintiffs allege that Defendant Angie Rodgers's actions blocking the sale of the WMATA Property "were premised, at least in part, on Mr. Vogel's race, because Defendant Rodgers allowed similarly situated African American real estate developers to negotiate with WMATA for the sale and purchase of property situated within the County without objection or interference." *Id*. at ¶ 67.

Given this, the complaint makes clear that the sole basis for the Plaintiffs' Section 1981 claim is that Mr. Vogel is White and that the Defendants did not object to a separate sale of real

estate involving an African American real estate developer.  *Id*. at ¶¶ 55-57.  Notably, the complaint contains no factual allegations to show how the Plaintiffs and the African American real estate developer identified in the complaint are similarly situated, or to show how the two distinct real estate transactions involving the Plaintiffs and the African American real estate developer are comparable.  *See Painter's Mill Grille*, 716 F.3d at 350-52 (rejecting a Section 1981 claim where plaintiffs failed to identify a specific, impaired contractual interest or racial animus and alleged only speculative comparator-based harm).

The Plaintiffs' reliance on *Woods v. City of Greensboro,* to preclude the dismissal of their Section 1981 claim, is also misplaced.  ECF No. 16 at 10-11.  In *Woods*, the Fourth Circuit credited comparator-based allegations that included statistical disparities and a detailed factual record that supported finding an inference of discrimination.  *Woods*, 855 F.3d at 651.  But, in contrast here, the Plaintiffs simply allege that the Defendants permitted an unrelated real estate sale of a property to an African American real estate developer, without explaining how this conduct shows that race was the reason for the alleged disparate treatment.  ECF No. 1 at ¶¶ 54-58.  Such allegations, without more, are not sufficient to support a plausible inference of intentional racial discrimination under Section 1981.  *See Domino's Pizza*, 546 U.S. at 479-80 (requiring that a plaintiff possess, or be denied, a specific contractual interest—not merely assert derivative or speculative harm).  And so, the Court must DISMISS the Plaintiffs' Section 1981 claim.[5]  Fed. R. Civ. P. 12(b)(6).

### C.  The Plaintiffs Fail To State A Section 1983 Claim

The Plaintiffs' Section 1983/equal protection claim in Count II of the complaint is also problematic.  To state a claim under Section 1983, the Plaintiffs must allege: (1) a deprivation of a right secured by the Constitution or laws of the United States and (2) that the alleged

---

[5] The Defendants also persuasively argue that Plaintiff Mark Vogel lacks standing to pursue claims under Section 1981 for any injuries suffered by Plaintiff MVA.  The Supreme Court has held that Section 1981 protects those enforcing contractual relationships, but individuals, such as Mr. Vogel, have no rights under contracts that are actually held by their corporation or limited liability company.  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 477, 476-77 (2006); *see also Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 348 (4th Cir. 2013) (The Fourth Circuit denied the individual plaintiffs' Section 1981 claims, holding that members of an LLC lack standing to sue for interference with the LLC's contracts, even if they personally suffer harm); *see also Lawrence v. DAP Prods., Inc.*, No. ADC-22-651, 2022 WL 2275595, at *3 (D. Md. June 23, 2022) (holding that even a sole member of an LLC lacks standing under Section 1981 to assert claims based on injury to the LLC, despite allegations of personal harm from racial discrimination).

deprivation was committed by a person acting under color of state law. *West*, 487 U.S. at 48; *Crosby*, 635 F.3d at 639. To show that the alleged deprivation was committed by a person acting under color of state law, the Plaintiffs must show that the Defendants exercised final policy-making authority under state or local law. *West*, 487 U.S. at 49.

This question is often fact-intensive and not appropriate for disposition at the motion to dismiss stage. But, in this case, the Court is satisfied that the Defendants have established that the Plaintiffs cannot show that Defendant Angie Rodgers committed the alleged discriminatory conduct while acting under color of state law, because Section 402 of the Prince George's County Charter forecloses such a finding in this case. ECF No. 12 at 10; *see Jett*, 491 U.S. at 737 (holding that whether a defendant exercises final policymaking authority is determined by looking at state and local positive law, as well as custom or usage having the force of law).

In this regard, it is undisputed that Section 402 of the Prince George's County Charter, which governs the allocation of executive authority, vests all executive power in the Prince George's County Executive. ECF No. 12 at 10. Given this, the County Executive alone holds the power to, among other things, make policy decisions on behalf of Defendant Prince George's County and to execute contracts and official documents on behalf of County. *Id.* And so, Section 402 of the Prince George's County Charter precludes a finding that Defendant Angie Rodgers exercised final policy-making authority over whether the County would support the sale of the WMATA Property to the Plaintiffs.

Because Defendant Angie Rodgers did not possess final policy-making authority as a matter of law, the Plaintiffs cannot establish that she acted under color of state law for the purpose of their Section 1983 claim. *West*, 487 U.S. at 48; *Crosby*, 635 F.3d at 639. Nor can the Plaintiffs show that Defendant Prince George's County is liable for her alleged conduct. And so, the Court also DISMISSES the Plaintiffs' Section 1983 claim. Fed. R. Civ. P. 12(b)(6).

### D. The Plaintiffs Fail To State Article 24 And Conspiracy Claims

As a final matter, the complaint also makes clear that the Plaintiffs' Article 24 and civil conspiracy claims are based upon the same alleged discriminatory conduct as their Section 1981 and 1983 claims. ECF No. 1 at ¶¶ 84 and 99. Given this, these claims must also fail for the reasons stated above. And so, the Court also DISMISSES the Plaintiffs' Article 24 and civil conspiracy claims in Counts II and IV of the complaint. Fed. R. Civ. P. 12(b)(6).

**V.     CONCLUSION**

For the foregoing reasons, the Court:

      (1) **GRANTS-in-PART and DENIES-in-PART** the Defendants' motion to dismiss (ECF No. 12); and

      (2) **DISMISSES** the complaint.

A separate Order shall issue.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge
